UNITED STATES DISTRICT COURT
                       DISTRICT OF CONNECTICUT

ROY C. ANDERSEN,                     :
    PLAINTIFF,                       :
                                     : CIVIL ACTION NO. 3:11cv355(VLB)
                                     :
v.                                   : NOVEMBER 30, 2011
                                     :
GOVERNOR AND COMPANY OF              :
THE BANK OF IRELAND,                 :
    DEFENDANTS.                      :


**MEMORANDUM OF DECISION DENYING IN PART AND GRANTING IN PART
DEFENDANT's [DKT. #11] MOTION TO DISMISS**

The Plaintiff, Roy C. Andersen ("Andersen"), brings this action against Defendant the Governor and Company of the Bank of Ireland (the "Bank") alleging in Count One breach of contract, in Count Two breach of implied covenant of good faith and fair dealing, and in Count Three of the Complaint violation of Conn. Gen. Stat. §31-71e, the Connecticut Wage Statute. Defendants have moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Andersen's breach of contract claim and breach of the implied covenant of good faith and fair dealing on the basis that the Bank is not in breach of an Employment Agreement between Andersen and the Bank. Defendants have also moved to dismiss Andersen's Connecticut Wage Statute claim on the basis that Plaintiff does not have a cause of action under the statute. For the foregoing reasons, Defendants' motion to dismiss is denied in part and granted in part.

1

Factual Allegations

The following facts are taken from Plaintiff's complaint. Andersen was employed by the Bank from July 16, 2007 until September 4, 2010. [Dkt. #29, Amended Compl. at ¶4]. Plaintiff alleges that pursuant to an automatic renewal clause in Andersen's Employment Agreement with the Bank at Section 3(a) the term of the agreement was automatically renewed for an additional two-year period from July 16, 2011 to July 15, 2013 because neither party gave the other written notice of its intention not to renew his employment agreement by July 16, 2010. [Dkt. #29, Amended Compl. at ¶12 and Dkt. #29, Ex. A, Employment Agreement].

By letter dated August 5, 2010, the Bank notified Andersen that he was terminated without cause pursuant to Section 3(d) of the Employment Agreement effective September 4, 2010. [Dkt. #29, Amended Compl. at ¶13]. Section 3(d) provided that upon termination without cause the Bank is obligated to pay Andersen "the unpaid portion of his Base Salary, Bonus (if any), earned up to and prorated to, the end of the Term, as it existed without regard to this termination, or twelve (12) months, whichever is longer." [*Id.* at ¶14].

In order to qualify for the post-termination payments due under Section 3(d), Andersen had agreed to "execute a waiver and release of claims in a form proposed by the Bank, but which release shall not limit [his] ability to make claims or bring actions arising under the terms of the [Agreement]." [*Id.* at ¶16]. Upon his termination, the Bank delivered to Andersen a proposed waiver and

2

release. Andersen alleges that he communicated to the Bank he would not sign the proposed release because it contained an unrestricted waiver that, contrary to the terms of the Agreement, would have limited his ability to make claims or bring actions arising under the terms of the Agreement. [*Id.* at ¶¶17-18].

In response, Andersen requested that the Bank deliver him a waiver and release that complied with the Agreement. The Bank delivered to Andersen a second proposed waiver and release. [*Id.* at ¶19]. Andersen alleges the second proposed waiver and release still limited his ability to make claims or bring actions arising under the Agreement. Andersen then executed and delivered to the Bank a version of the proposed waiver and release which he modified to make clear that the waiver and release did not limit his ability to make claims or bring actions arising under the Agreement. [*Id.* at ¶¶20-22].

Thereafter, the Bank refused to pay the amounts due to Andersen pursuant to Section 3(d) of the Employment Agreement. Andersen alleges that the amounts due to him under Section 3(d) are his continued base salary, amounts for reimbursement for health care coverage, and amounts due for any bonus he would have been entitled to receive had his employment been continued through the conclusion of the Term of the Agreement. [*Id.* at ¶¶23-24].

In May 2010, Andersen received a "BOI International Retention Award." Andersen contends that to the extent the financial benchmark set forth in the award has been met or to the extent that the Bank made payment for similarly

3

awarded bonuses to its employees, Andersen is due payment for that award. [*Id.* at ¶25].

### Legal Standard

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (internal quotations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 129 S.Ct. at 1949-50). "At the second step, a court should determine whether the

4

'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 129 S.Ct. at 1950). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S.Ct. at 1949 (internal quotation marks omitted).

The Court's review on a motion to dismiss pursuant to Rule 12(b)(6) is generally limited to "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). In addition, the Court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). Here, Plaintiff has attached the Employment Agreement, the various proposed waiver and release agreements as well as the BOI International Retention Award to its complaint and therefore the Court may consider these documents on Defendants' motions to dismiss.

Analysis of Breach of Contract Claim

Under Connecticut law, the elements of a breach of contract action are (1) the formation of an agreement; (2) performance by one party; (3) breach of the agreement by the other party; and (4) damages. *Empower Health LLC v. Providence Health Solutions LLC*, No. 3:10-cv-1163, 2011 WL 2194071, at *4 (D. Conn. June 3, 2011) (citation omitted). "It is a fundamental principle of contract

law that the existence and terms of a contract are to be determined from the intent of the parties. The parties' intentions manifested by their acts and words are essential to the court's determination of whether a contract was entered into and what its terms were." *Auto Glass Express, Inc. v. Hanover Ins. Co.*, 293 Conn. 218, 225 (2009) (internal quotation marks and citation omitted). "[T]he interpretation and construction of a written contract present only questions of law, within the province of the court ... so long as the contract is unambiguous and the intent of the parties can be determined from the agreement's face." *Tallmadge Bros., Inc. v. Iroquois Gas Transmission Sys., L.P.*, 252 Conn. 479, 495 (2000) (quoting 11 S. Williston, *Contracts* § 30.6 (4th ed. 1999)). "Contract language is unambiguous when it has a definite and precise meaning ... concerning which there is no reasonable basis for a difference of opinion." *Levine v. Advest, Inc.*, 244 Conn. 732, 746 (1998) (internal citations and quotations omitted).

"[T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the [writing] ... Where the language of the [writing] is clear and unambiguous, the [writing] is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity." *Auto Glass Express*, 293 Conn. At 225-26 (internal quotation marks and citation omitted).

"The individual clauses of a contract, however, cannot be construed by taking them out of context and giving them an interpretation apart from the contract of which they are a part. A contract should be construed so as to give full meaning and effect to all of its provisions ..." *Id.* at 753 (internal quotation marks and citation omitted). "[E]very provision of the contract must be given effect if it can reasonably be done, because parties ordinarily do not insert meaningless provisions in their agreements." *Connecticut Co. v. Division*, 147 Conn. 608, 617 (1960).

i. *Analysis of whether Andersen failed to satisfy a condition precedent under the Employment Agreement*

Defendants argue that Andersen has failed to plead sufficient facts to show that he fulfilled the condition precedent to the Bank's duty to perform under the Employment Agreement when he failed to execute the Bank's proposed waiver and release and therefore contend that the Bank's duty to perform never arose. [Dkt. #12, Defs. Mem. at 5]. In particular, Defendants argue that since Andersen only signed and executed a waiver and release that he modified and therefore did not execute a form of waiver and release as proposed by the Bank as required under Section 3(d) of the Employment Agreement that he failed to satisfy the condition precedent under Section 3(d). Defendants further argue that the Bank never countersigned the modified waiver and release that Andersen submitted and therefore the Bank never entered into a binding agreement requiring it to make any payments to Andersen. [*Id.* at 6].

7

In response, Andersen argues that Defendants themselves breached the terms of the Agreement by refusing to accept Andersen's tendered waiver and release and by refusing to provide a waiver and release which complied with the terms of the Employment Agreement. Andersen asserts that Section 3(d) expressly provides that Andersen must "execute a waiver and release of claims in a form proposed by the Bank, but which release shall not limit [his] ability to make claims or bring actions arising under the terms of this [Agreement]." [Dkt. #29, Ex. A]. Andersen contends that the Bank's first and second proposed waiver and releases did limit his ability to make claims or bring actions arising under the terms of the Agreement and therefore Defendants themselves breached the terms of the Employment Agreement. Andersen therefore argues that the plain language of the Employment Agreement does not require him to sign a proposed waiver and release which so limited his rights. Andersen points to Section 7 of the Bank's second proposed waiver and release to demonstrate that the proposed release did limit his ability to make claims and bring actions under the agreement. Section 7 of the Bank's second proposed release states in relevant part that "in consideration for the payments and benefits to Employee provided in this Agreement, Employee agrees to and hereby does release and discharge the [Bank] from any and all claims, causes of action, arbitrations, and demands of any kind, whether known or unknown, which he has or ever has had, which are based on acts or omission occurring up to and including the date this Agreement is fully executed." [Dkt. #29. Ex. D].

8

**The Court finds that Andersen has pled sufficient facts which plausibly demonstrate that Defendants breached the Employment Agreement. The plain language of Section 3(d) only requires that Andersen execute a waiver and release which did not limit his ability to make claims or bring actions arising under the terms of the Employment Agreement. Andersen has pled sufficient facts that demonstrate that the Bank failed to propose a release which did not limit his ability to make claims or bring actions arising under the terms of the Employment Agreement as expressly provided under Section 3(d). Moreover, it is clear from the allegations in the Amended Complaint, that Andersen attempted to obtain from the Bank a proposed waiver and release which complied with the terms of the Employment Agreement and that the Bank repeatedly failed to provide him with one. Unsurprisingly, these facts are the basis for Andersen's breach of implied covenant of good faith and fair dealing claim.**

**The Court finds Defendant's argument that Andersen has failed to satisfy a condition precedent to be specious because it is clear from the allegations in the amended complaint that it was the Bank who failed to tender to Andersen a proposed waiver that complied with the express terms of the Employment Agreement and not that Andersen failed to execute a proposed waiver that was compliant with the Agreement. If the Bank had proposed a waiver and release which did comply with the terms of the Employment Agreement and Andersen had failed to execute it, those facts would suggest that Andersen failed to satisfy a condition precedent. However, Andersen has plausibly alleged that the Bank did not propose a compliant waiver and release and therefore the Court cannot**

conclude that Andersen failed to satisfy a condition precedent as Defendant argues. The condition precedent in Section 3(d) is expressly contingent upon the Bank's tender of a waiver and release which did not limit Andersen's ability to make claims or bring actions arising under the terms of the Employment Agreement. Therefore, the condition precedent was never triggered due to the Bank's failure to provide Andersen with an appropriate release. Accordingly, the Court finds that the amended complaint contains sufficient factual matter to state a breach of contract claim that is plausible on its face. Defendants' motion to dismiss Plaintiff's breach of contract claim is hereby denied.

*ii. Analysis of whether the term of Andersen's employment was automatically renewed for an additional two years until July 2013*

Defendants have indicated that they offered Andersen twelve months salary and COBRA benefits in accordance with Section 3(d) of the Employment Agreement. Section 3(d) in relevant part states "you shall be entitled to receive the unpaid portion of your Base Salary, Bonus (if any), earned up to, and prorated to, the end of the Term, as it existed without regard to this termination, or twelve (12) months, whichever is longer." [Dkt. 19, Ex. A]. Defendants contend that the "Term" of the Employment Agreement should end on July 15, 2011. Defendants reason that pursuant to Section 3(a) of the Employment Agreement, the Term only renewed automatically for a successive two-year period on the two year anniversary of the Commencement Date or any renewals thereof which in this case was July 15, 2011.

**Section 3(a) provides in relevant part "the term of this Agreement shall be renewed automatically for successive two-year periods on the two-year anniversary of the Commencement Date or unless either party gives written notice of its intention not to renew the Agreement to the other party at least twelve (12) months in advance of the annual anniversary of the Commencement Date or any renewals thereof." [Dkt. 19, Ex. A]. Defendants argue that since the Bank terminated Andersen's employment effective September 4, 2010 that was prior to the two year anniversary of the Commencement Date or any renewals thereof on July 15, 2011 and therefore the Term did not automatically renew for an additional two-year period. Accordingly, the Bank contends that the Term ended on July 15, 2011.**

**On the other hand, Andersen contends that since neither party gave notice at least twelve months in advance of the annual anniversary of the Commencement Date which in the case was July 16, 2010 that the Term automatically renewed when the notice period in Section 3(a) passed on July 16, 2010. Accordingly, Andersen argues that the Term was automatically renewed for an additional two year period on July 16, 2010 when Defendants failed to notify Andersen of their intention to not renew and therefore the Term ended on July 15, 2013. Further, Andersen contends that to adopt the Defendant's interpretation of the Agreement would render the requirement regarding advance notice of non-renewal meaningless and reminds the Court that when construing contracts, the Court shall give "effect to all the language included therein, as the law of contract interpretation militates against interpreting a contract in a way that renders a**

11

provision superfluous." *Ramirez v. Health Net of the Northeast, Inc.*, 285 Conn. 1, 14 (2008).

Under Section 3(d) of the Employment Agreement which governs "termination without cause" it provides that Andersen is entitled to receive the unpaid portion of his base salary, bonus (if any), "earned up to, and prorated to, the end of the Term, *as it existed without regard to this termination.*" [Dkt. #29, Ex. A] (emphasis added). Here, the express language of Section 3(d) requires the Court to interpret the renewal provision contained in Section 3(a) "without regard to [Andersen's] termination." [Dkt. #29, Ex. A]. Therefore if Defendants had not terminated Andersen's employment effective September 4, 2010, since the Defendants did not notify Andersen of their intention to not renew the contract on July 16, 2010 the Term did renew for an additional two-year period until July 15, 2013. It is well established that the "individual clauses of a contract, however, cannot be construed by taking them out of context and giving them an interpretation apart from the contract of which they are a part. A contract should be construed so as to give full meaning and effect to all of its provisions ..." *Levine*, 244 Conn. at 753 (internal quotation marks and citation omitted). The Court must therefore give effect to express language in Section 3(d) which provides that the Term should be measured "without regard to [Andersen's] termination." [Dkt. #29, Ex. A]. To do otherwise would render the language provided in Section 3(d) meaningless. In light of the language in Section 3(d) which requires the Court to construe the language in Section 3(a) regarding renewal of the Term "without regard to [Andersen's] termination" the Court finds

that under the Agreement, the Term had automatically renewed and therefore ended on July 15, 2013.

### Analysis of Good Faith and Fair Dealing Claim

Defendants argue that Andersen has failed to properly plead an action for breach of the implied covenant of good faith and fair dealing. Under Connecticut law, an action for breach of the covenant of good faith and fair dealing requires proof of three essential elements: "first, that the plaintiff and the defendant were parties to a contract under which the plaintiff reasonably expected to receive certain benefits; second, that the defendant engaged in conduct that injured the plaintiff's right to receive some or all of those benefits; and third, that when committing the acts by which it injured the plaintiff's right to receive benefits it reasonably expected to receive under the contract, the defendant was acting in bad faith." *American Intern. Specialty Lines Co. v. HMT Inspections*, No.MMXCV095007419S, 2011 WL 1759098, at *5 (Conn. Super. Ct. April 13, 2011) (internal quotation marks and citation omitted). In particular, Defendants argue that Andersen has failed to proffer any fact above and beyond the Bank's alleged breach of the Employment Agreement to support his claim that the Bank acted in bad faith.

The Connecticut Supreme Court explained in *De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 269 Conn. 424 (2004) that:

> It is axiomatic that the ... duty of good faith and fair dealing is a covenant implied into a contract or a contractual relationship … [E]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. In other words, every contract carries an

> implied duty requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement. The covenant of good faith and fair dealing presupposes that the terms and purpose of the contract are agreed upon by the parties and that what is in dispute is a party's discretionary application or interpretation of a contract term. To constitute a breach of [the implied covenant of good faith and fair dealing], the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith. Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive .... Bad faith means more than mere negligence; it involves a dishonest purpose.

*De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 269 Conn. 424, 432 (2004) (internal quotation marks and citations omitted).

Andersen argues that the Bank acted in bad faith by not making any severance payments that were due under the Employment Agreement and by seeking to require Andersen to sign a waiver which was in contravention of the express terms of the Employment Agreement. The facts as alleged in the amended complaint demonstrate that Andersen repeatedly tried to obtain from the Bank a proposed waiver and release that was compliant with the express terms of the Employment Agreement. As discussed above, Andersen has plead sufficient facts plausibly demonstrating that the Bank failed to provide him with an appropriate waiver which did not limit his ability to make claims or bring actions arising under the terms of the Agreement. The Bank has not articulated a reason for its failure to proffer a waiver-free release for Andersen's signature. Contrary to Defendant's contention, these alleged facts do plausibly demonstrate an outright refusal to fulfill a contractual obligation which was not prompted by an honest mistake but by some interested motive. The Employment Agreement

14

clearly required that the Bank proffer to Andersen a waiver and release which did not limit his ability to make claims or bring actions under the Agreement. Andersen repeatedly tried to obtain from the Bank a proposed waiver and release that was compliant with the express terms of the Agreement. Moreover, Andersen has pled facts which demonstrate that the Bank repeatedly attempted to make Andersen sign a waiver and release which would have limited his ability to make claims against the Bank. Accordingly if Andersen had signed a release which limited his ability to make claims against the Bank that would have furthered the Bank's financial interests. Therefore, Andersen has alleged facts which plausibly demonstrate that the Bank purposefully failed to provide him an appropriate waiver out of interested motive. Since Andersen has pled sufficient facts which plausibly demonstrate bad faith on the part of Defendants, the Defendant's motion to dismiss the breach of the implied covenant of good faith and fair dealing claim is denied.

### Analysis of Connecticut Wage Statute Claim

Defendants argue that Andersen does not have a cause of action under Conn. Gen. Stat. §37-71e, the Connecticut Wage Statute, as wages under the statute are defined in Section 37-71a(3) as "compensation for labor or services rendered by an employee" and Connecticut Courts have consistently held that severance pay does not constitute wages under this definition. [Dkt. #12, Def. Mem. at 12]. Defendants also argue that any bonus Andersen would be entitled to was purely discretionary and therefore not recoverable under the statute. [*Id.*]. *See Weems v. Citigroup, Inc.*, 289 Conn. 769, 782 (2008) ("[B]onuses that are

15

awarded solely on a discretionary basis and are not linked solely to the ascertainable efforts of the particular employee, are not wages under §37-71a(3).").

In his opposition to the Defendants' motion to dismiss, Andersen concedes that the post-termination payments of his continued base salary and COBRA reimbursement do not constitute wages under the Statute. [Dkt. #20, Pl. Mem. at 22]. Andersen instead points to the "BOI International Retention Award" he received as the basis for his wage claim. Andersen argues that the retention award was not discretionary but instead contingent on certain objective criteria such as obtaining certain financial benchmarks and therefore would constitute wages under §37-71a(3). However as Defendants call to attention the express terms of the retention award state that payment is conditioned on "[Andersen] remaining in the employment of the Bank of Ireland Group between the date of this letter and the actual payment date (relevant payroll in March 2011)." [Dkt. #29, Ex. F]. Since Andersen's employment with the Bank ended on September 4, 2010, he was not an employee during the actual payment date in March 2011. Therefore, by the express terms of the award, Andersen would not be entitled to the second payment provided for in the award. Accordingly, Defendant's motion to dismiss Andersen's Connecticut Wage Statute claim is granted.

**Conclusion**

Based upon the above reasoning, the Defendants' [Dkt. #11] motion to dismiss is DENIED IN PART AND GRANTED IN PART. Plaintiff's breach of

contract and breach of the implied covenant of good faith and fair dealing claim remains extant. Plaintiff's Connecticut Wage Statute claim is hereby dismissed.

IT IS SO ORDERED.

　　　　　/s/　　　　　

Hon. Vanessa L. Bryant

United States District Judge

Dated at Hartford, Connecticut: November 30, 2011